Milligan, J.,
delivered the opinion of the court:
The facts of these cases are peculiar, and, when both records are considered together, they present a conflict of testimony which in degree is rarely met with in courts of justice. Much of it is wholly irreconcilable, and the court in finding the essential facts on which the cases rest, have been compelled to rely on that part of the testimony which is not directly impeached, rather than to attempt to reconcile the cross-swearing of the witnesses.
The early history of the claimant, Hall, as presented in the *173 findings, rests on tbe testimony of a single witness, with no attempt on the part of Roach to contradict or impeach it, or of Hall to enlarge or corroborate it.
He is simply shown to have been a man of color, of Indian and African descent. His mother resided at Alexandria, (now) Ya., when he was young, and was recognized as a free woman.
Following this meager account of his early history, he next appears in a slave-market in the city of Washington, D. C., whence he was taken, with other slaves, to New Orleans, La., and there sold by a trader to the claimant Roach’s father, who sent him up to Bachelor’s Bend plantation, in Mississippi, in 1844. Roach held and treated him as a slave until his death, in 1847, and by succession hepassedto his son Benjamin Roach, who continued the same relation toward him until after the seizure of the cotton in suit in 1862.
How it happened that he was placed in a slave-market in Washington does not appear, nor is it shown how old he was when he was transferred to New Orleans and then sold to Roach’s father; but that he was bought there in 1844, and was held in servitude by the claimant’s testator and his father until he was emancipated through the instrumentality of the war, are established by the overwhelming weight of evidence in these cases.
Whether Hall’s long servitude, under the circumstances just detailed, was legal or illegal, we need not now decide. If it were illegal, the laws of Mississippi afforded him an ample remedy to assert and maintain his right to freedom. (Revised Code of Mississippi of 1857, chap. 33, sec. 3, arts. 10 and 11, pp. 236, 237.)
The question we have to deal with is, whether or not the claimant, Hall, in his condition of servitude, under the laws of the State of Mississippi, could lawfully acquire and hold the property he claims to have sold to Roach, and for which the cotton in suit is alleged to have been given.
There is no evidence that the elder Roach’s title to Hall was ever called in question, or that he had notice when he purchased him in 1844 that he claimed to be free-born. His son, the claimant’s testator, at the father’s death, took the title by succession, and in this respect stands in his father’s shoes.
Roach’s title to Hall was good against all the world, so far as this record develops the facts, except Hall himself, who, as *174 before shown, could, under the laws of the State, assert his right to freedom if he conceived himself illegally held in servitude. But no one else, under the rigorous laws of Mississippi, could set him at liberty.
The ninth article of the third section, chapter 33, Bevised Code of 1857, page 236, provides: “It shall not be lawful for any person, either by will, deed, or other conveyance, directly or in trust, either express, or secret, or otherwise, to make any disposition of any slave or slaves, for the purpose or with the intent to emancipate such slave or slaves within the State, or to provide that any such slaves be removed to be emancipated elsewhere; or by any evasion or indirection so to provide that the Colonization Society, or any donee or grantee, can accomplish the act, intent, or purpose designed to be prohibited by this article. Bor shall it be lawful for any executor, trustee, donee, legatee, or other person, under any pretense whatever, to remove any slave or slaves from this State with the intent to emancipate such slave or slaves. But all such wills, deeds, conveyances, dispositions, trusts, or other arrangements, made, had, or intended to accomplish the emancipation of any slave or slaves after the death of the owner, no matter when made, shall be deemed and held entirely null and void, and the said slave or slaves thereby attempted or intended to be emancipated shall descend to be distributed among the heirs at law of the testator, grantor, or owner, or otherwise disposed of as though such testator, grantor, or owner had died intestate.”
Passing from the question of the power of the owner of a slave in the State of Mississippi to emancipate such slave, and leaving it to rest on the statute, we come next to consider the capacity of a person held to servitude in that State to acquire and hold property in his own right.
Here again we are confronted by the positive enactments of the State. The third article of chapter 33, section 1, Bevised Code of 1857, page 235, declares that “ all negro and mulatto slaves, in all courts of judicature in this State, shall be held, taken, and adjudged to be personal property.” And article 32, section 8, same chapter, prohibits every master or employer of a slave from licensing such slave to go at large and trade as a freeman, and the master or employer so offending is declared liable to indictment, and on conviction to be fined $50, which, *175 after conviction, may be repeated as often as the offense shall be committed.
Article 35 (ii., p. 243) declares: “If any owner or employer of a slave shall license or permit such slave to go at large through any county or neighborhood, and buy any article whatever for the purpose of traffic, or for the purpose of selling again, either for the owner or employer or for the benefit of the slave, on his own account, such owner or employer shall be guilty of a misdemeanor, and may be indicted therefor, and on conviction shall be fined the sum of fifty dollars ; and if after conviction the slave shall be found going at large as aforesaid, the owner or employer may be again punished in the same way, and so on as often as the offense shall be repeated; and, besides the foregoing penalty, any such slave may be apprehended and treated.as a runaway.”
Again, article 41, section 9, same chapter, (ib., p. 244,) declares it a high misdemeanor for “ any person who shall himself, or by his agent, buy, or sell to, or receive from, any slave any article, thing, or commodity whatever, * * * without the written consent or permission of the master, or owner, or employer, specifying what articles are permitted to be bought or sold, or permission given in person.”
The penalty attached to this provision of the statute is a fine of not less than $50 nor more than $500 for every offense.
Following this stringent provision of the statute comes another still more severe. The forty-seventh article makes it the duty of sheriff's, constables, coroners, justices of the peace, and town constables or marshals, on seeing any slave offering any article for sale, or carrying the same with that intention without proper permission, to seize from and take such articles or commodities which such slave may have in his possession without authority to sell, and shall moreover inflict, or order to be inflicted, on such slave any number of lashes not exceeding thirty-nine; and every such sheriff, constable, or other officer, for every failure to enforce this provision, shall be deemed guilty of a misdemeanor.
From these provisions of the laws of Mississippi, which were in force during the greater part, if not the whole, period of Hall’s servitude in the State, it seems clear the claimant, Hall, in his condition of servitude, was wholly incapacitated by law to acquire and hold the stock, hogs, pork, &c., he claims to have *176 sold to bis master, and in consideration of which he received the cotton in question.
He makes no attempt to show that he had any permission, either written or in parol; as required by law, to buy or hold in his own right the property on which Boach’s alleged indebtedness to him is founded; nor does he show or attempt to show that he had the license or other permission required by .the twelfth section of the Code, page 253, to remain in the State as a freeman, and as such to acquire and hold property.
In every aspect of these cases, viewing them in the light of transactions under the laws of Mississippi, it seems dear the consideration claimed to have been given by Hall for the cotton fails, and on well-settled principles the alleged contract must fail with it.
Hall’s title rests on his contract, and however much we may personally regret the severity of the laws of the State in respect to the colored race, and rejoice that they have passed away with the institution they were enacted to sustain, asjudicial officers we are compelled to give them effect while they were in force, and therefore we hold no title to the cotton passed to Hall under his alleged contract.
Hall’s petition must be dismissed, and judgment entered in favor of Margaret Boach, executrix of Benjamin Boach, deceased,
for the following sums:
Net proceeds of'sixty-nine bales of cotton. $7,042 83
Batable proportion of illegal charges.. 1, 869 00
Total. 8, 911 83